D. A. MINOR, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

1. It is not error for the trial court to refuse to give instructions which contain only reiterations and repetitions in various language of principles of law which are fully covered by the charge of the court.

2. There is no error in refusing to give an instruction which under the facts would be misleading.

3. The giving of cautionary instructions is usually a matter of discretion with the trial court, and unless an appellate court can see from the facts of the case a fair trial was not had by reason of the refusal to give such instructions, it should not for that cause alone reverse a case.

4. An instruction which assumes a narrower scope to the proof than the evidence affords, is properly refused.

This case was decided by Division B.

Writ of Error to the Criminal Court of Record for Duval County.

The facts in the case are stated in the opinion of the court.

*John E. Hartridge* and *F. W. Pope,* for plaintiff in error;

*W. H. Ellis,* Attorney General, for the state.

HOCKER, J.—On the 23rd day of April, 1907, an information was filed in the criminal court of record of Duval county against D. A. Minor, the plaintiff in error, and Bryant Nichols, charging them in the first count with the larceny of cigars of the value of $110.00 of the property of Gus Muller, and in the second count with feloniously receiving stolen cigars of the value of $110.00, of the property of Gus Muller knowing the same to have been stolen. Minor and Nichols were tried and convicted under the second count of the information, and sentenced to the state prison. Minor has sued out a writ of error from this judgment.

The first five assignments of error are abandoned. The remaining thirteen assignments are all based on the refusal of the court to give certain instructions requested by Defendant Minor. Before considering these assignments, let us glance at some of the charges and instructions which were given to the jury by the court touching the offense of which the accused Minor was convicted. The court of its own motion defined the offense of larceny, grand and petit, and in substance instructed the jury that in order to convict the defendants, or either of them, of receiving stolen goods, they must be satisfied from the evidence beyond a reasonable doubt, that a larceny had been committed of the property of Muller or

some part of it described in the information within two years prior to filing the information, and that after the property was stolen, defendants did have, buy, receive or aid in the concealment of the same, knowing it to have been stolen; that this could be shown by circumstances, if they were such as enabled the jury to believe from the evidence beyond a reasonable doubt, the defendants knew the goods to have been before stolen. The court further instructed the jury at the request of the accused, Minor, that, in the application of circumstantial evidence to the determination of this case the utmost caution and vigilance should be used, and that it is always insufficient when assuming all to be proved which the evidence tends to prove some other reasonable hypothesis arising and growing out of the evidence in the cause than the one sought to be established by the evidence may be true. That circumstances of suspicion, no matter how grave or strong, are not evidence of guilt, and the defendant must be acquitted unless the fact of guilt is proven beyond every reasonable doubt, to the exclusion of every reasonable hypothesis, consistent with his innocence." The court went so far as to instruct the jury at the request of the defendant that: "the fact, if the evidence should prove it to be a fact, that stolen property was found in defendant's possession, raises no presumption of law that defendant is guilty. It is the mere presumption of fact which the jury may consider together with all the other evidence in determining whether the defendant committed the crime." Whether the defendant was entitled to this instruction, we do not feel called upon to decide. The court further instructed the jury that: "the degree of credit which ought to be given to the testimony of an accomplice is a matter exclusively within the province of the jury, but great caution should be used in weighing such testimony, and that an accom-

plice is one who is in some way concerned in the commission of crime, with others.   *   *   *.

That if the jury are not satisfied beyond all reasonable doubt to a moral certainty and to the exclusion of every reasonable hypothesis but that of defendant's guilt, they should find him not guilty; and it is not necessary to raise a reasonable doubt that the jury should find a probability of defendant's innocence; that such a doubt may arise where there is no probability of his innocence in the testimony; and if the jury have not an abiding conviction to a moral certainty of his guilt, they should acquit him." "You are at liberty to disregard the statement of a witness or witnesses, if any there be, who have been impeached, either by direct contradiction or otherwise as it may appear from the testimony.   The fact that a person is charged with crime raises no presumption against him, or his character, for he is presumed to be innocent until the contrary is proven from the evidence, and this presumption attends him or her throughout the entire trial, and in every step, and in every stage of the case."   All the foregoing instructions were given at the request of defendant, Minor, and apply to both counts in the indictment.

Instructions requested from the sixth to the tenth inclusive, are simply statements in various language of the law in regard to circumstantial evidence and reasonable doubt which was sufficiently set forth in the instructions given.

Instruction eleven is erroneous and misleading.   It was an endeavor to instruct the jury, that though it was proven beyond a reasonable doubt that the property was stolen, and the stolen property was found in defendant's possession, in addition, the evidence must show beyond a reasonable doubt that the defendant stole it, or received it knowing it to have been stolen.   This under the facts of this case which show the property was recently stolen

conflicts with the presumption which arises from the recent and unexplained possession of stolen property in cases where larceny is charged. Its tendency was to mislead the jury as to such presumption.

Instructions twelve, thirteen and fourteen, are cautionary in their nature designed to inform the jury, that they were the sole judges of the credibility and weight of the evidence and in passing on the credibility of the witnesses, they had a right to take into consideration their conduct, demeanor, bearing, bias, prejudice, etc.

The giving of cautionary instructions is usually a matter of discretion with the trial court, and unless the appellate court can see from the facts of the case a fair trial was not had by reason of the refusal to give such instructions, it should not for that cause alone, reverse the case. Hughes on Instructions to Juries, Sec. 49; Blashfield on Instructions to Juries, Civil and Criminal, Sec. 213.

So far as we can discover, the only witnesses whose testimony required such cautionary instructions, were Harris, the negro witness who was contradicted by Nichols, Mrs. Nichols and Mrs. Minor, in regard to his taking a barrel of cigars at night, from Nichols' place to Minor's house; and Jones, who confessed to being an accomplice of Minor's. As to this testimony the trial judge at the request of Minor gave cautionary instructions and it was not necessary to repeat such instructions.

Instructions fifteen, sixteen and eighteen dealt with the subject of reasonable doubt, and upon that question the court had already given sufficient instructions.

Instruction seventeen undertook to inform the jury that the cigars alleged to have been stolen must be identified beyond a reasonable doubt. In addition to what has been said about the sufficiency of the instructions upon the subject of reasonable doubt, this instruction assumes a narrower scope to the proof upon the subject of

the identity of the cigars than the evidence affords. It assumes that the only evidence of identity was that the cigars "looked alike" (those alleged to have been stolen) or that they were of "the same brand." There was more evidence of identity than this. They were shown to have borne a date stamped on them when they left the factory at Tampa corresponding with the date of the purchase by Muller, and it was shown by the agent of the factory at Jacksonville that no one else in Jacksonville, than Muller, bought those brands of fine cigars, in such large quantities, as was embraced in this shipment; the most, if not all, of which was found at the Clyde Line depot about a month after they were stolen in a box marked "Dry Goods," and directed to C. N. Whiles, Charleston, S. C., along with five or six other boxes directed to the same party. Minor admitted that these boxes were sent to the depot by him. Minor admitted to the policeman that the box containing the cigars was sent to the depot by him, but claimed he had bought and paid for them. However, he did not tell from whom he bought them.

We have examined all the questions raised by the assignments of error, and find no reversible error in the record.

The judgment of the trial court is affirmed.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., COCKRELL and WHITFIELD, JJ., concur in the opinion.